IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHELLE RASCOE and RASCOE   :
COURTS, INC.,                            :     CIVIL ACTION
                                   :   NO.: 1:15-cv-00994
            Plaintiffs,        :
                                   :
            v.                  : (Chief Judge Conner)
                                 : (Magistrate Judge Saporito)
                                 :
SUSQUEHANNA TOWNSHIP,      :
NEIL CODY, in his individual      :
capacity only and GEORGE DREES,  :
in his individual and official capacity, :
                                 :
           Defendants.      :

## REPORT AND RECOMMENDATION

This is a civil rights action brought under 42 U.S.C. §1983 alleging violations of the Fifth and Fourteenth Amendments of the Constitution. The plaintiff, Michelle Rascoe and Rascoe Courts, Inc. are represented by counsel. The defendants are: Neil Cody, an Adult Residential Licensing Unit Regional Director for the Commonwealth of Pennsylvania Department of Human Services; Susquehanna Township which is located in Dauphin County, Pennsylvania; and George Drees, the Fire Marshall of Susquehanna Township.

In their second amended complaint consisting of two counts, the plaintiffs seek compensatory and punitive damages for the defendants' alleged violations of their procedural and substantive due process rights. All of the defendants have filed motions to dismiss on the basis of failing to state a claim. (Docs. 29, 32). Susquehanna Township and Drees (the "Township Defendants") maintain that the plaintiffs' claims are time-barred and, alternatively, they assert that the plaintiffs' claims for violations of their procedural and substantive due process rights, their Monell claim, and their request for punitive damages fail as a matter of law. Also, Drees claims that he is entitled to qualified immunity. Cody argues that the plaintiffs' constitutional claims fail as a matter of law.

The parties have briefed the issues and the motions are ripe for disposition. For the reasons set forth below, we will recommend that the Township Defendants' motion be granted and all claims against them be dismissed as time-barred, that the Court sua sponte dismiss all claims against Cody as time-barred, and Cody's motion be denied as moot.

I.    Background

Plaintiff Rascoe and her husband, Larry Rascoe, are the sole officers of Rascoe Courts, Inc., a personal care facility. On November 19,

2012, defendant Drees and Susquehanna Township Health Inspector Lynn Roche ("Roche") conducted an inspection of the building at 3251 Butler Street (the "Building"), a vacant former assisted living facility that was in the process of being acquired by the plaintiffs for use as a personal care home. (Doc. 20 ¶ 8).  The Building's vacant status caused Drees to issue numerous violations. (Id.). Rascoe retained Simplex Grinnell LLP ("Simplex Grinnell") to complete a fire alarm inspection and ensure that the building was compliant with all fire regulations. (Id. ¶ 9). On December 18, 2012, Simplex Grinnell performed the requested services and issued a report stating that "no deficiencies" were found. (Id.).

On December 21, 2012, Roche and Drees again inspected the building. Drees saw Simplex Grinnell's inspection report and called Simplex Grinnell to confirm the details of the report. (Id. ¶ 10). Also, Roche determined that prior health violations had been corrected. (Id.). With the exception of a pending and later approved elevator inspection report, Drees reported that the previously noted violations had been corrected. (Id.).

On February 26, 2013, Pennsylvania Department of Human Services ("DHS") Adult Residential Licensing Unit Director Ronald Melusky ("Melusky") granted Rascoe Courts, Inc. a new home provisional license for twelve residents. (Id. ¶ 13). The license stated that the Building was in substantial compliance with applicable state regulations for personal care homes. (Id.).

On April 3, 2013, DHS Inspectors Rebecca Riel ("Riel") and Ronald Minnich ("Minnich") came to the building because of a complaint of neglect concerning James Leone, a resident of the building. James Leone did not make the complaint himself, and neither Riel, Minnich, nor anyone else from DHS ever provided Rascoe with any details of the complaint, such as its source or the nature of the allegations. (Id. ¶ 14). Minnich, along with DHS inspector Doug Hoover ("Hoover") again visited the Building on April 15, 2015. Minnich and Hoover never explained the purpose of this visit. (Id. ¶ 15). However, when Rascoe requested that Hoover sign in pursuant to the Building's protocol, Hoover refused and became irate. (Id.). Hoover aggressively stated to Rascoe, "I better not find anything wrong in this [B]uilding today." (Id.).

4

Rascoe called DHS, explained Hoover's conduct, and requested another inspector to replace Hoover. She was directed to defendant Cody who dismissed Rascoe's concerns. (Id.). However, when Rascoe returned to the location where Hoover had been sitting, Hoover stood up and left the Building. (Id.).  When Rascoe asked Minnich to follow her into her office so that they could proceed with their meeting, Minnich received a telephone call from Cody and he immediately left as well.(Id.).

On April 16, 2013, Cody and Minnich again came to the Building purportedly to follow up on the alleged neglect claim concerning Mr. Leone. (Id. ¶ 16). For unknown reasons, the fire alarm went off shortly after they entered the building. (Id.). After everyone was evacuated in accordance with standard protocol, the fire alarm was silenced. (Id.). Progress Fire Company Assistant Fire Chief Ralph Parsons ("Parsons") came to the building in response to the fire alarm.  (Id.) Parsons told Rascoe that the strobe light issue needed to be addressed and corrected. (Id.). Larry Rascoe immediately called Simplex Grinnell to arrange for the strobe light to be repaired, and began to conduct a fire watch. (Id.).

Cody and Minnich never spoke with Parsons regarding the fire safety issue. (Id.).

After everyone returned to the building, plaintiff Rascoe's mother, who volunteered at the Building, passed out due to breathing difficulties caused from her chronic obstructive pulmonary disease. (Id. ¶ 18). Rascoe left to accompany her mother to the hospital. (Id.). Cody and Minnich remained at the Building. (Id.). Rather than speaking to Mr. Leone, or requesting records from Mr. Rascoe, Defendant Cody and Minnich proceeded to walk through the Building. (Id.). When they were ready to leave, Defendant Cody told Rascoe, via telephone, to keep Cody updated on the strobe light situation. (Id.).

The next day, April 17, 2013, Cody, Riel, and Minnich again appeared at the Building and proceeded to walk around for several hours. They failed to provide Mr. Rascoe with an explanation as to why they were walking through the building. (Id. ¶ 19). At Cody's request, Roche and Drees arrived at the building at approximately 1:00 P.M. (Id.). Although the strobe lights continued to activate, Simplex Grinnell was scheduled to arrive later that day to correct the problem

within the requisite  forty-eight (48) hour period provided by 55 Pa. Code § 2600.130(g).(Id.). Nevertheless, at 4:00 P.M, Drees informed Rascoe that he was recommending that the Building be closed because of an inoperable fire alarm system. (Id.). Cody subsequently informed the plaintiffs and the residents of the Building that he was closing-down the Building for "multiple issues." (Id.). However, Cody repeatedly refused to specify the issues, despite requests from Rascoe and her residents. (Id.). No Emergency Removal Order was issued to plaintiff Rascoe Courts by Cody or anyone else. (Id. ¶ 20).   Rascoe was neither afforded an opportunity to be heard before residents were removed from the Building, nor provided notice of the alleged violations leading to the emergency removal. (Id.).

Meanwhile, Roche informed Rascoe that the building passed the health inspection and that Roche would not recommend closure. (Id. ¶ 21). However, Roche stated that if DHS revoked the Building's provisional license, then she would have to revoke the Building's health license (Id.).

Simplex Grinnell technician Matthew Concannen arrived at 6:00 P.M. on April 17, 2013 in order to repair the strobe lights. (Id. ¶ 22). Rascoe called Drees to let him know that the strobe lights were being repaired within the requisite time period, and requested that Drees speak with Concannen. (Id.). Drees refused to do so. (Id.). Rascoe then activated her cellphone's speaker function, and Concannen told Drees that the strobe lights were fixed by a simple reset. (Id.). Drees ignored Concannen's comment. Rascoe then requested that Concannen provide written confirmation that the strobe light issue had been resolved so that she could present it to Cody, who was still at the Building. (Id.). However, Cody refused to accept the written confirmation. (Id.).  Upon leaving the Building, Drees reported the alleged fire code violations to the Dauphin County Municipal Court. (Id. ¶ 23).

Rascoe alleges that she was before Magisterial District Judge James Lenker on April 19, 2013, regarding an unrelated matter; however, Drees was also in Municipal Court that same day and subsequently brought the alleged fire code violations to Judge Lenker's attention. (Id. ¶25). Judge Lenker indicated  he would look into Drees'

allegations and provide a ruling at a later date. (Id.). Judge Lenker acquitted Rascoe Courts of the alleged fire code violations on May 21, 2013. (Id. ¶28). The plaintiffs were notified that the Building's license was officially revoked by certified letter dated April 22, 2013, from Melusky. (Id. ¶26). The letter notifying her that the building's license was officially revoked contained a violation report titled "Licensing Inspection Summary." Rascoe alleges that she had never been previously informed of these alleged violations or provided an opportunity to offer a plan of correction. (Id.). The plaintiffs appealed the decision on April 29, 2013. (Id. ¶27).

Thereafter, the plaintiffs began the appeal process of the decision to revoke Rascoe Courts' license. (Id. ¶29). Rascoe subsequently fired her attorney and allegedly attempted unsuccessfully to retain new counsel. (Id. ¶30). Rascoe alleges that she sent a letter to Administrative Law Judge Andrew Maloney ("ALJ Maloney") on December 27, 2013, requesting a continuance of the matter as well as copies of all materials that had previously been submitted by her prior attorney. (Id.). However, she alleges that ALJ Maloney never responded to her requests. (Id.).

Apparently, ALJ Maloney was assigned to hear the plaintiffs' appeal and make a recommendation to DHS.

Rascoe appeared at the scheduled hearing on January 8, 2014, and again attempted to convince ALJ Maloney to grant her a continuance to retain an attorney, explaining that much of the evidence she had intended to offer at the hearing had been kept by her prior attorney. But, ALJ Maloney refused her request and Rascoe represented herself during the hearing. (Id.). The hearing stretched into two days and Rascoe alleges that she requested multiple subpoenas; however, her requests were either denied or ignored. (Id. ¶33). She alleges that multiple individuals testified regarding violations, but none of the individuals were able to substantiate the claims. (Id. ¶¶32-34). Rascoe submitted exhibits for ALJ Maloney's consideration, which were not accepted into evidence and ALJ Maloney allegedly also prevented her from presenting two witnesses on her behalf. (Id. ¶35). Plaintiffs' appeal was denied on May 29, 2014. (Id. ¶36). Plaintiffs allege that ALJ Maloney's findings were inaccurate, as he allegedly based his findings on the "unsubstantiated claims from Cody, Drees, Minnich, and Riel." (Id. ¶36). DHS followed the recommendation of ALJ Maloney and subsequently denied the appeal. (Id.).

10

II.    Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (quoting Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d

1406, 1409 (3d Cir. 1991); <u>Johnsrud v. Carter</u>, 620 F.2d 29, 32–33 (3d Cir.

1980); <u>Holocheck v. Luzerne Cty. Head Start, Inc.</u>, 385 F. Supp. 2d 491,

495 (M.D. Pa. 2005). In deciding the motion, the Court may consider the

facts alleged on the face of the complaint, as well as "documents

incorporated into the complaint by reference, and matters of which a

court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues & Rights,

Ltd.</u>, 551 U.S. 308, 322 (2007).

III.   <u>Discussion</u>

    A. The plaintiffs' claims against Susquehanna Township and
       Drees are time-barred

Susquehanna Township and Drees seek dismissal of the plaintiffs'

second amended complaint on the basis that the claims made therein are

time-barred.   In determining the issue, we are guided by the following

rules.   The statute of limitations for a § 1983 claim arising in

Pennsylvania is two years.   <u>Montanez v. Sec'y Pa. Dept. of Corr.</u>, 773

F.3d 472, 480 (3d Cir. 2014); <u>see also</u> 42 Pa. Cons. Stat. Ann. § 5524.

The date of accrual of the cause of action in a  § 1983 action is

determined by federal law.   <u>Kach v. Hose</u>, 589 F.3d 626, 634 (3d Cir.

2009).   Under federal law, a cause of action accrues "when the plaintiff knew or should have known of the injury upon which the action is based." Id.

Here, the plaintiffs contend that the cause of action accrued on May 29, 2014, the date which ALJ Maloney recommended that the plaintiffs' appeal be denied.   The defendants, Susquehanna Township and Drees, posit that the cause of action accrued as early as April 17, 2013, the date when Drees informed Rascoe that he was recommending closing the Building because of an inoperable fire alarm system.   (Doc. 20 ¶19; Doc. 30, at 14).   In addition, they assert that at the latest, the cause of action accrued on April 18, 2013, the date when Drees filed the citation with the Dauphin County Municipal Court. (Doc. 20 ¶ 23; Doc. 30, at 14-15).   We disagree with the parties' positions as to the date the plaintiffs' cause of action accrued.   Rather, we find that the operative date when the plaintiffs knew or should have known of the injury upon which their causes of action are based is April 29, 2013, the date Rascoe appealed the decision to revoke the Building's license. (Doc. 20 ¶ 27).

The appeal was from Malusky's letter dated April 22, 2013, notifying the plaintiffs of the DHS decision to revoke the license to

operate the Rascoe Courts personal care facility. (Doc. 30-2). The plaintiffs' second amended complaint acknowledges that a "violation report" was attached to the letter. (Doc. 20 ¶ 26). The attachment to the Malusky letter is titled "Licensing Inspection Summary," consisting of twelve pages. (Doc. 30-2, at 3-14). The summary lists the four dates of inspection and the names of the representatives on-site. It also itemizes the violations by citing the applicable regulations and a summary of the facts substantiating each alleged violation. It is not clear from the second amended complaint when the plaintiffs received the certified letter dated April 22, 2013, revoking the personal care home license. But the plaintiffs do not dispute receiving it and they have alleged that they appealed the decisions of the DHS on April 29, 2013. (Doc. 20 ¶¶ 26-27). This demonstrates that they knew or should have known of the adverse action of the DHS regarding the revocation of the license no later than April 29, 2013. Therefore, the statute of limitations for the § 1983 claims expired two years later on April 29, 2015. See Wyatt v. Keating 130 Fed. App'x 511, 513 (3d Cir. 2005) (insurance agent's revocation of license to sell insurance gave notice of § 1983 claims for purposes of determining date of accrual of cause of action); Soppick v. Borough of West

14

Conshohocken, 118 Fed. App'x 631, 634 (3d Cir. 2004) (two-year statute of limitations on homeowner's § 1983 claim, alleging borough zoning hearing board improperly sustained "stop work" order for their home renovation project accrued on the date they received the "stop work" order).  This action was initiated more than two years later on May 21, 2015 and thus was untimely filed. (Doc. 1).

The plaintiffs attempt to avoid the limitations bar by invoking the continuing violations doctrine. This doctrine creates a "narrow" and "equitable exception to the timely filing requirement." Tearpock–Martini v. Borough of Shickshinny, 756 F.3d 232, 236 (3d Cir. 2014) (quoting Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)). Under this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." Montanez, 773 F.3d at 481 (quoting Cowell, 263 F.3d at 292). That is, "the court will grant relief for the earlier related acts that would otherwise be time barred."  Cowell, 263 F.3d at 292. The doctrine focuses solely on "continual unlawful acts, not continual ill effects from an original violation." Weis–Buy Servs., Inc. v.

Paglia, 411 F.3d 415, 423 (3d Cir. 2005) (quoting Cowell, 263 F.3d at 293). Only defendants' "affirmative acts" count. Tearpock–Martini, 756 F.3d at 236 (quoting Cowell, 263 F.3d at 293). "[A] government official's refusal to undo or correct [a] harm [caused by the official's unlawful conduct] is not an affirmative act for purposes of establishing a continuing violation." Id. at 236 n.8.

Initially, the continuing violation doctrine does not apply when the plaintiff "is aware of the injury at the time it occurred." Morganroth & Morganroth v. Norris, Mclaughlin & Marcus, P.C., 331 F.3d 406, 417 n.6 (3d Cir. 2003).  As we just explained, the plaintiffs became aware of the relevant injury (i.e., the revocation of Rascoe Courts' personal care home license) sometime after April 22, 2013,  and on or before April 29, 2013. Despite this knowledge, the plaintiffs failed to assert their rights in a timely fashion.  Thus, we find that the continuing violation rule does not provide plaintiffs relief.

In addition to their arguments regarding accrual, the plaintiffs contend that the statute of limitations should be equitably tolled to account for the time they sought administrative redress.  (Doc. 31-2, at 17).  Generally, a litigant seeking equitable tolling bears the burden of

establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, (1990).  The plaintiffs maintain that they diligently pursed their rights by timely filing an appeal of the Commonwealth's license revocation and "resolutely attempted to mount a defense despite lacking an attorney and a fair opportunity to present evidence and cross examine witness against them." (Id., at 18).  They were not informed of the unfavorable resolution of their license revocation appeal until May 29, 2014, and filed this action less than a year later.  (Id.).  The plaintiffs offer no argument in support of the second prong of the test (i.e., that some extraordinary circumstance stood in the way).

An examination of the cases in which courts have applied the equitable tolling doctrine as between private litigants affords the plaintiffs little help. Federal courts have typically extended equitable relief only sparingly. For example, equitable tolling has been allowed where the claimant has actively pursued his judicial remedies but filed a defective pleading during the statutory period.  See Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424 (1965) (plaintiff timely filed complaint in wrong

court); <u>Herb v. Pitcairn</u>, 325 U.S 77 (1945) (same); <u>Am. Pipe & Constr.</u>

<u>Co. v. Utah</u>, 414 U.S. 538 (1974) (timely filing of a defective class action

tolled the limitations period as to the individual claims of purported class

members). It has been allowed where the complainant has been induced

or tricked by his adversary's misconduct into allowing the filing deadline

to pass.  <u>See</u> <u>Glus v. Brooklyn E. Dist. Terminal</u>, 359 U.S. 231 (1959)

(adversary's misrepresentation caused plaintiff to let filing period lapse);

<u>Holmberg v. Armbrecht</u>, 327 U.S. 392 (1946) (same). Courts have

generally been much less forgiving in receiving late filings where the

claimant failed to exercise due diligence in preserving his legal rights.

<u>Baldwin Cty. Welcome Ct. v. Brown</u>, 466 U.S. 147 (1984).

Based upon the state of the record, we do not find any facts to

support a contention that some extraordinary circumstance stood in the

way of the plaintiffs in pursuing their Section 1983 claims.  Moreover, we

are not persuaded that the plaintiffs diligently pursued their rights as

they waited nearly twelve months after hearing of the DHS denial of

their license revocation appeal before initiating the instant federal civil

action.  Thus, we find no basis to equitably toll the statute of limitations

and therefore we will recommend that the motion to dismiss filed by

Susquehanna Township and Drees (Doc. 29) be granted in that the plaintiffs' claims are time-barred.  In light of this recommendation it is unnecessary for us to address the alternative arguments set forth in the Township's Defendants' motion papers.

## B.   The plaintiffs' claims against Cody are time-barred

The plaintiffs' claims against Cody arise from the very same operative facts as the claims asserted against the Township Defendants. Although Cody has not moved for dismissal on statute of limitations grounds, the plaintiffs have had an opportunity to address this issue by virtue of the Township Defendants' motion, and it is clear that the complaint affords a sufficient basis for sua sponte dismissal of the claims against Cody as a matter of law.  See Bryson v. Brand Insulations, Inc., 621 F. 2d 556, 559 (3d Cir. 1980).  "Where one defendant has successfully raised a statute of limitations defense with respect to a particular claim, a court may also dismiss the claim sua sponte as to similarly situated defendants who have failed to raise the defense." Coakley v. Jaffe, 49 F. Supp. 2d 615, 623 n.5 (S.D.N.Y. 1999), abrogated on other grounds by Gusberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268 (2d Cir. 1999); see also Fid & Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc.,

936 F. Supp. 2d 441, 447 (D.N.J. 2013) (merits dismissal extended to non-moving defendant); <u>Bowers v. Nat'l Collegiate Athletic Ass'n</u>, 9 F. Supp 2d 460, 497-98 (D.N.J. 1998) (same); <u>Jones v. Local 705, Int'l Bhd. of Teamsters</u>, No. 86 C 3415, 1986 WL 15122, at *1 (N.D. Ill. Dec. 31, 1986) (dismissal extended to non-moving defendant where "plaintiff has had an opportunity to respond to this statute of limitations issue by virtue of the [moving defendant]'s motion to dismiss"); <u>cf.</u> <u>Malak v. Associated Physicians, Inc.</u>, 784 F.2d 277, 280 (7th Cir. 1986) (summary judgment). <u>See generally</u>, <u>Goodwin v. Castille</u>, 465 Fed. App'x 157, 163 (3d Cir. 20125) ("we have noted that <u>sua</u> <u>sponte</u> dismissal under Rule 12(b)(6) is proper after service of process, <u>Oates v. Sobolevitch</u>, 914 F.2d 428, 430 (3d Cir. 1990), but that it should be exercised with caution to ensure that the decision to dismiss is an informed one, <u>Briscor v. Klaus</u>, 538 F.3d 232, 258 (3d Cir. 2008).").

Accordingly, it is recommended that the plaintiffs' claims against Cody be dismissed <u>sua</u> <u>sponte</u> as time-barred.  In light of this recommendation, it is unnecessary for us to address the arguments set forth in Cody's motion papers, and we recommend that his motion to dismiss be denied as moot.

C.   Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment unless an amendment would be inequitable or futile.  Grayson v. Mayview State Hosp., 293 F. 3d 103, 108 (3d Cir. 2002).  In this case it is clear from the facts alleged that amendment would be futile.  It is therefore recommended that the plaintiffs be denied leave to file an amended complaint following dismissal.

IV.   Recommendation

Based upon the foregoing, we RECOMMEND that:

1.      The Township Defendants' motion to dismiss (Doc. 29) be GRANTED and all claims against them be DISMISSED as untimely filed, without leave to file a curative amendment.

2.       All claims against Cody be DISMISSED sua sponte as untimely filed, without leave to file a curative amendment;

3.      Cody's motion to dismiss (Doc. 32) be DENIED as MOOT; and

4.      The Clerk be directed to CLOSE this case.


                              ___***s/ Joseph F. Saporito, Jr.***___
                              JOSEPH F. SAPORITO, JR.
                              U.S. MAGISTRATE JUDGE

Dated:  November 22, 2016

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHELLE RASCOE and RASCOE   :
COURTS, INC.,                      :    CIVIL ACTION
                               :   NO.: 1:15-cv-00994
            Plaintiffs,      :
                               :
         v.               : (Chief Judge Conner)
                             : (Magistrate Judge Saporito)
                             :
SUSQUEHANNA TOWNSHIP,    :
NEIL CODY, in his individual    :
capacity only and GEORGE DREES,  :
in his individual and official capacity,  :
                             :
          Defendants.     :

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated November 22, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the

proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: November 22, 2016               _**s/ Joseph F. Saporito, Jr.**_
                                       JOSEPH F. SAPORITO, JR.
                                       United States Magistrate Judge